UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID SCHAEFER, Individually and On Behalf of All Others Similarly Situated, ) ) ) | Case No. |
| Plaintiff, ) ) | **CLASS ACTION** |
| v. ) ) ) | **COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS** |
| LANNETT COMPANY, INC., ARTHUR P. BEDROSIAN, MARTIN P. GALVAN, and G. MICHAEL LANDIS ) ) ) ) | **DEMAND FOR JURY TRIAL** |
| Defendants. ) ) | |

## CLASS ACTION COMPLAINT

Plaintiff David Schaefer ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Lannett Company, Inc., ("Lannett" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons other than Defendants (defined below) who purchased or otherwise acquired Lannett securities between September 10, 2013 and July 16, 2014, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      Lannett Company, Inc. develops, manufactures, packages, markets, and distributes generic versions of branded pharmaceutical products in the United States. The Company sells its pharmaceutical products to generic pharmaceutical distributors, drug wholesalers, chain drug retailers, private label distributors, mail-order pharmacies, other pharmaceutical manufacturers, managed care organizations, hospital buying groups, governmental entities, and health maintenance organizations. The Company was founded in 1942, is based in Philadelphia, Pennsylvania, and its shares trade on the NYSE under the ticker symbol "LCI."

3.      According to Roth analyst Scott R. Henry, sales of the Company's drug digoxin, which is used to treat congestive heart failure, account for approximaely 23% of the Company's total net sales.

4.      Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company was fixing, maintaining, and controlling prices of digoxin in violation of Connecticut antitrust laws; (2) the Company was allocating and dividing customers and territories with

2

competitors relating to the sale of digoxin in violation of Connecticut antitrust laws; (3) the Company's anticompetitive practices subjected Lannett to heightened regulatory scrutiny, including possible investigation by the Connecticut Office of the Attorney General ("CTAG"); and (4) as a result of the foregoing, Lannett's public statements were materially false and misleading at all relevant times.

5.      On July 16, 2014, the Company issued a press release and filed a Form 8-K with the SEC, announcing that the Company received interrogatories and a subpoena from the State of Connecticut Office of the Attorney General concerning its investigation into pricing and customer/territorial division of digoxin. The press release stated, in part:

> PHILADELPHIA – July 16, 2014 – Lannett Company, Inc. (NYSE: LCI) today announced that it has received interrogatories and subpoena from the State of Connecticut Office of the Attorney General concerning its investigation into pricing of digoxin. According to the subpoena, the Connecticut Attorney General is investigating whether anyone engaged in any activities that resulted in (a) fixing, maintaining or controlling prices of digoxin or (b) allocating and dividing customers or territories relating to the sale of digoxin in violation of Connecticut antitrust law. The Company maintains that it acted in compliance with all applicable laws and regulations and intends to cooperate with the Connecticut Attorney General's investigation.

6.      As a result of this news, shares of Lannett fell $8.05 or over 17% on unusually heavy volume, to close at $39.04 on June 16, 2014.

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

**JURISDICTION AND VENUE**

7.      The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

8.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

9.      Venue is proper in this District pursuant to §27 of the Exchange Act and 28 U.S.C. §1391(b), as defendant is headquartered in this District and a significant portion of the Defendants' actions, and the subsequent damages, took place within this District.

10.      In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

**PARTIES**

11.      Plaintiff, as set forth in the attached Certification, acquired Lannett securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

12.      Defendant Lannett is a Delaware corporation with its principal executive offices located at 9000 State Road, Philadelphia, PA.  Lannett's common stock trades on the NYSE under the ticker symbol "LCI."

13.      Defendant Arthur P. Bedrosian ("Bedrosian") has served at all relevant times as the Company's Chief Executive Officer ("CEO"), President and a member of the Board of Directors.

14.     Defendant Martin P. Galvan ("Galvan") has served at all relevant times as the Company's Chief Financial Officer ("CFO"), Vice President of Finance, and Treasurer.

15.     Defendant G. Michael Landis ("Landis") has served at all relevant times as the Company's Director of Financial Reporting and Principal Accounting Officer.

16.     The defendants referenced above in ¶¶ 13 – 15 are sometimes referred to herein as the "Individual Defendants."

17.     Defendant Lannett and the Individual Defendants are referred to herein, collectively, as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

18.     Lannett Company, Inc. develops, manufactures, packages, markets, and distributes generic versions of branded pharmaceutical products in the United States. It offers solid oral, extended release, topical, and oral solution finished dosage forms of drugs that address a range of therapeutic areas. The Company provides its products for various medical indications including glaucoma, migraine, antibiotic, anesthetic, endometriosis, irritable bowel syndrome, obesity, congestive heart failure, antipsychotic, pain management, thyroid deficiency, dryness of the mouth, epilepsy, gout, bronchospasms, hypertension, and gallstone.

19.     The Company markets its products under the Diamox, Fioricet, Fiorinal, Fiorinal w/ Codeine #3, Cleocin, Danocrine, Bentyl, Tenuate, Dospan, Lanoxin, Adoxa, Periostat, Prolixin, Dilaudid, Levoxyl, Synthroid, Loxitane, Adipex-P, Fastin, Salagen, Mysoline, Benemid, Rifadin, Brethine, Dyazide, and Actigall brands. It also manufactures active pharmaceutical ingredients.

20.     The Company sells its pharmaceutical products to generic pharmaceutical distributors, drug wholesalers, chain drug retailers, private label distributors, mail-order

pharmacies, other pharmaceutical manufacturers, managed care organizations, hospital buying groups, governmental entities, and health maintenance organizations. It has development and supply agreements with Azad Pharma AG, Swiss Caps of Switzerland, Pharma 2B, and the GC Group of Israel, as well as with Jerome Stevens Pharmaceuticals, Inc., Cerovene, and Summit Bioscience LLC.

21.     The Company was founded in 1942, is based in Philadelphia, Pennsylvania, and its shares trade on the NYSE under the ticker symbol "LCI".

22.     According to analysts, sales of the Company's drug digoxin, which is used to treat congestive heart failure, accounts for approximately 23% of the Company's total net sales.

**Materially False and Misleading**
**Statements Issued During the Period**

23.     On September 10, 2013, the Company issued a press release and filed a Form 8-K with the SEC[1], announcing its financial and operating results for the fourth quarter and fiscal year ended June 30, 2013. For the quarter, the Company reported net income of $3.6 million, or $0.12 per diluted share, on revenue of $40.2 million, compared to net income of $1.4 million, or $0.05 per diluted share, on revenue of $35.7 million, for the same period in the prior year. For the year, the Company reported net income of $13.3 million, or $0.46 per diluted share, on revenue of $151.1 million, compared to net income of $3.9 million, or $0.14 per diluted share, on revenue of $123.0 million, for the prior year.

24.     On September 12, 2013, the Company filed an annual report on Form 10-K with the SEC which was signed by defendants Bedrosian, Galvan, and Landis, and reiterated the Company's previously announced quarterly financial results and financial position. In addition, the Form 10-K contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002

---

[1] The 8-K was filed with the SEC on September 12, 2013.

("SOX") by defendants Bedrosian and Galvan, stating that the financial information contained in the Form 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.

25.    In the Form 10-K the Company stated the following regarding digoxin:

> In 2004, we entered into an exclusive ten-year distribution agreement (the "JSP Distribution Agreement") with Jerome Stevens Pharmaceuticals ("JSP") covering four different product lines.  Two of these product lines, Levothyroxine Sodium and Digoxin, collectively accounted for approximately 46% of our net sales in fiscal year 2013 and both products have experienced significant market growth in sales over the past few years.  On August 19, 2013 the Company reached an agreement with JSP to extend the term of the initial agreement.  Refer to Note 22 "Subsequent Events" for more information.
>
> *       *       *
>
> Digoxin tablets are produced and marketed with two different potencies.  This product is manufactured by JSP and we distribute it under the JSP Distribution Agreement.  Digoxin tablets are used to treat congestive heart failure in patients of various ages and demographics.  Net sales of this product totaled $11.7 million in 2013.  In our distribution of these products, we compete with two similar generic products from Impax and West-Ward and the brand Lanoxin from Covis.
>
> *       *       *
>
> Approximately 47% of our fiscal year 2013 net sales are of distributed products, primarily manufactured by JSP.  Two of these products are Levothyroxine Sodium and Digoxin, which accounted for 38% and 8%, respectively, of our Fiscal 2013 net sales, and 41% and 9%, respectively, of our net sales for Fiscal 2012.

26.    On November 7, 2013, the Company issued a press release and filed a Form 8-K with the SEC, announcing its financial and operating results for the first quarter of fiscal year 2014 ended September 30, 2013. The Company reported a net loss of $6.0 million, or $0.20 per diluted share, on revenue of $45.8 million, compared to net income of $2.9 million, or $0.10 per diluted share, on revenue of $35.3 million, for the same period in the prior year.

27.    In the press release, the Company stated, in part:

7

"We continued our positive momentum in the fiscal 2014 first quarter with record net sales," said Arthur Bedrosian, president and chief executive officer of Lannett. "In addition, excluding the impact of the non-recurring JSP contract renewal charge, our gross profit and bottom-line were the highest in the company's history. Our excellent financial performance was driven by strong sales of existing products, price increases and favorable product mix."

Bedrosian added, "The recently completed contract extension with Jerome Stevens will allow us to continue to market several important medications that have been key drivers of our positive financial performance.

28.     On November 8, 2013, the Company filed a quarterly report on Form 10-Q with the SEC which was signed by defendants Bedrosian, Galvan, and Landis, and reiterated the Company's previously announced quarterly financial results and financial position. In addition, the Form 10-Q contained SOX certifications signed by defendants Bedrosian and Galvan, stating that the financial information contained in the Form 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

29.     On February 6, 2014, the Company issued a press release and filed a Form 8-K with the SEC, announcing its financial and operating results for the second quarter of fiscal year 2014 ended December 31, 2013. The Company reported net income of $16.6 million, or $0.46 per diluted share, on revenue of $67.3 million, compared to a net loss of $2.9 million, or $0.10 per diluted share, on revenue of $36.6 million, for the same period in the prior year.

30.     In the press release, the Company stated, in part:

"For the fiscal 2014 second quarter, we recorded the highest net sales, gross margin and net income in our company's history," said Arthur Bedrosian, president and chief executive officer of Lannett. "Our excellent financial performance was driven by price increases, strong sales of existing products and favorable product mix. The successful recent stock offering and newly established $50 million credit facility provide liquidity to fund our future growth, which includes the development of our deep pipeline as well as potential acquisitions. We continue to believe our company's future is very bright."

> Bedrosian added, "We have now recorded five consecutive quarters of record sales, crossed the billion dollar market cap threshold and, in December, began trading on the New York Stock Exchange."

31.     On February 7, 2014, the Company filed a quarterly report on Form 10-Q with the SEC which was signed by defendants Bedrosian, Galvan, and Landis, and reiterated the Company's previously announced quarterly financial results and financial position.  In addition, the Form 10-Q contained SOX certifications signed by defendants Bedrosian and Galvan, stating that the financial information contained in the Form 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

32.     On May 7, 2014, the Company issued a press release and filed a Form 8-K with the SEC, announcing its financial and operating results for the third quarter of fiscal year 2014 ended March 31, 2014.  The Company reported net income of $23.0 million, or $0.63 per diluted share, on revenue of $80.0 million, compared to a net loss of $3.9 million, or $0.14 per diluted share, on revenue of $39.0 million for the same period in the prior year.

33.     In the press release, the Company stated, in part:

> "The fiscal 2014 third quarter represents the sixth consecutive quarter of record net sales, as well as the ninth consecutive quarter in which net sales and adjusted EPS exceeded the comparable prior-year period," said Arthur Bedrosian, president and chief executive officer of Lannett.   "Our excellent financial performance was largely driven by price increases across multiple product categories and strong sales of existing products."

34.     On May 9, 2014, the Company filed a quarterly report on Form 10-Q with the SEC which was signed by defendants Bedrosian, Galvan, and Landis, and reiterated the Company's previously announced quarterly financial results and financial position. In addition, the Form 10-Q contained SOX certifications signed by defendants Bedrosian and Galvan, stating that the financial information contained in the Form 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

35.     The statements referenced in ¶¶ 23–34 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts, which were known to Defendants or recklessly disregarded by them, including that: (1) the Company was fixing, maintaining, and controlling prices of digoxin in violation of Connecticut antitrust laws; (2) the Company was allocating and dividing customers and territories with competitors relating to the sale of digoxin in violation of Connecticut antitrust laws; (3) the Company's anticompetitive practices subjected Lannett to heightened regulatory scrutiny, including possible investigation by the Connecticut Office of the Attorney General ("CTAG"); and (4) as a result of the foregoing, Lannett's public statements were materially false and misleading at all relevant times.

## The Truth Emerges

36.     On July 16, 2014, *Bloomberg News* reported that Roth analyst Scott R. Henry wrote that Lannett may be at risk of regulatory action by the CTAG, who is investigating competitor Impax Laboratories' pricing of digoxin.  Henry wrote that Lannett may also get subpoena given it also sells digoxin at higher prices and said that sales of digoxin account for approximately 23% of Lannett's net sales. Because of the high percentage of Lannett's sales that come from digoxin, Henry stated that he was even more cautious about Lannett, claiming a probe would raise Lannett's risk profile and would suggest that current generic market may not be sustainable.

37.     Later on July 16, 2014, the Company issued a press release and filed a Form 8-K with the SEC, announcing that the Company had, in fact, received interrogatories and subpoena from the State of Connecticut Office of the Attorney General concerning its investigation into pricing and customer division of digoxin. The press release stated, in part:

PHILADELPHIA – July 16, 2014 – Lannett Company, Inc. (NYSE: LCI) today announced that it has received interrogatories and subpoena from the State of Connecticut Office of the Attorney General concerning its investigation into pricing of digoxin. According to the subpoena, the Connecticut Attorney General is investigating whether anyone engaged in any activities that resulted in (a) fixing, maintaining or controlling prices of digoxin or (b) allocating and dividing customers or territories relating to the sale of digoxin in violation of Connecticut antitrust law. The Company maintains that it acted in compliance with all applicable laws and regulations and intends to cooperate with the Connecticut Attorney General's investigation.

38.    As a result of this news, shares of Lannett fell $8.05, or over 17%, on unusually heavy volume, to close at $39.04 on June 16, 2014.

39.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

40.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Lannett securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.   Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

41.    The members of the Class are so numerous that joinder of all members is impracticable.   Throughout the Class Period, Lannett securities were actively traded on the NYSE.   While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.   Record owners and other members of the Class

11

may be identified from records maintained by Lannett or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

42.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

43.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

44.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Lannett;

- whether the Individual Defendants caused Lannett to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Lannett securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

45.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as

the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

46.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Lannett securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Lannett securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

47.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

48.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## SCIENTER ALLEGATIONS

49.     As alleged herein, Defendants acted with scienter because at the time that they issued public documents and made other public statements in Lannett's name, they knew or recklessly disregarded the fact that such statements were materially false and misleading and/or omitted material facts concerning, among other things, the Company was fixing, maintaining and controlling prices of digoxin, and the Company was allocating and dividing customers and territories relating to the sale of digoxin in violation of Connecticut antitrust law.   Moreover, Defendants:  (i) knew that such documents and statements would be issued or disseminated to the investing public; (ii) knew that persons were likely to rely upon those misrepresentations and omissions; and (iii) knowingly and/or recklessly participated in the issuance and/or dissemination of such statements and/or documents as primary violators of the federal securities laws.   Defendants' materially false and misleading statements and omissions of material fact artificially inflated Lannett's stock price during the Class Period.

50.     The Individual Defendant's scienter is further demonstrated by their senior level positions at the Company and access to material, non-public information concerning the marketing, distribution, and sales of digoxin.   In fact, defendants Bedrosian, Galvan, and Landis, as CEO, CFO, and Principal Accounting Officer of Lannett, respectively, signed and submitted, as exhibits to each Form 10-K and 10-Q filed during the Class Period, certifications under the Sarbanes-Oxley Act of 2002 certifying that the information contained therein fairly presented, in all material respects, the financial condition and results of operations of the Company.

51.     As set forth in detail throughout this Complaint, defendants Bedrosian, Galvan, and Landis, by virtue of their receipt of information reflecting the true facts regarding Lannett, control over, and/or receipt and/or modification of Lannett's allegedly materially misleading

misstatements and omissions and/or their association with the Company that made them privy to confidential proprietary information concerning Lannett, participated in the fraudulent scheme alleged herein, including but not limited to, artificially inflating Lannett's stock price.

52.    In addition, Defendants were further motivated to conceal its sales of digoxin in violation of Connecticut antitrust law because the Company was in the middle of several potential strategic acquisitions in the domestic and international deal market during the Class Period, which required Defendants to maintain an inflated stock price.  Specifically, defendant Bedrosian described the Company's potential strategic activity in the deal market during the May 7, 2014 third quarter 2014 earnings conference call, stating.

> Well, actually, the United States, we found about 4 potential acquisitions.  We've talked to a few of them and we're close to 1 of them. So that I'm finding no difficulties there. . . .  So we found about 3 or 4 of those that you might say we've lined up. Overseas, we came across -- our French banker found an opportunity for us in Italy that so far is turning out to be very rewarding. . . . ***But remember in our size, it's easier to acquire a company***.

53.    Therefore, maintaining an inflated stock price during the Class Period was essential to Lannett's ability to maximize its domestic and international acquisition strategy.

## COUNT I

### Violation of Section 10(b) of The Exchange Act and Rule 10b-5
### Against All Defendants

54.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

55.    This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

56.    During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the

other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Lannett securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Lannett securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

57.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Lannett securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Lannett's finances and business prospects.

58.     By virtue of their positions at Lannett, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants

were committed willfully or with reckless disregard for the truth. In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

59.     Defendants were personally motivated to make false statements and omit material information necessary to make the statements not misleading in order to personally benefit from the sale of Lannett securities from their personal portfolios.

60.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of Lannett, the Individual Defendants had knowledge of the details of Lannett's internal affairs.

61.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Lannett. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Lannett's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Lannett securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Lannett's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Lannett securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

62.     During the Class Period, Lannett securities were traded on an active and efficient market.   Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Lannett securities at prices artificially inflated by Defendants' wrongful conduct.   Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.   At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Lannett securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.   The market price of Lannett securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

63.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

64.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### Violation of Section 20(a) of
### The Exchange Act Against The Individual Defendants

65.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

66.     During the Class Period, the Individual Defendants participated in the operation and management of Lannett, and conducted and participated, directly and indirectly, in the conduct of Lannett's business affairs.  Because of their senior positions, they knew the adverse non-public information about Lannett's misstatement of income and expenses and false financial statements.

67.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Lannett's financial condition and results of operations, and to correct promptly any public statements issued by Lannett which had become materially false or misleading.

68.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Lannett disseminated in the marketplace during the Class Period concerning Lannett's anticompetitive practices.   Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Lannett to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Lannett within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Lannett securities.

69.     Each of the Individual Defendants, therefore, acted as a controlling person of Lannett.  By reason of their senior management positions and/or being directors of Lannett, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Lannett to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of Lannett and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

70.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Lannett.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: August 27, 2014                          Respectfully submitted,

                                   By:     *Michael D. Donovan*
                                           Michael D. Donovan
                                           Noah Axler
                                           **DONOVAN AXLER, LLC**
                                           1845 Walnut Street, Suite 1100
                                           Philadelphia, PA  19103
                                           Telephone:    215-732-6067
                                           Facsimile:    215-732-8060
                                           *mdonovan@donovanaxler.com*
                                           *naxler@donovanaxler.com*

                                           **POMERANTZ LLP**
                                           Jeremy A. Lieberman
                                           Francis P. McConville
                                           600 Third Avenue, 20th Floor
                                           New York, New York 10016
                                           Telephone:  (212) 661-1100
                                           Facsimile:  (212) 661-8665
                                           jalieberman@pomlaw.com
                                           fmcconville@pomlaw.com

                                           And,

                                           Patrick V. Dahlstrom
                                           10 South La Salle Street, Suite 3505
                                           Chicago, Illinois 60603
                                           Telephone:  (312) 377-1181
                                           Facsimile:  (312) 377-1184
                                           pdahlstrom@pomlaw.com

                                           *Attorneys for Plaintiff*

## CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1.   I, _DAVID SCHAEFER_, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2. I have reviewed a Complaint against Lannett Company, Inc. ("Lannett" or the "Company"), and authorize the filing of a comparable complaint on my behalf.

3. I did not purchase or acquire Lannett securities at the direction of plaintiff's counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4. I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired Lannett securities during the class period, including providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5. To the best of my current knowledge, the attached sheet lists all of my transactions in Lannett securities during the Class Period as specified in the Complaint.

6. During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

7. I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.   I declare under penalty of perjury that the foregoing is true and correct.


Executed ___8 · 22 - 14___
             **(Date)**


___David Schaefer___
             **(Signature)**

___David   Schaefer___
             **(Type or Print Name)**

**Lannett Company, Inc. (LCI)**                    Schaefer, David

## LIST OF PURCHASES AND SALES

| DATE | PURCHASE OR SALE | NUMBER OF SHS/UTS | PRICE PER SH/UT |
|------|------------------|-------------------|-----------------|
| 05/30/2014 | PUR | 471 | $42.3160 |
| 06/09/2014 | PUR | 200 | $47.8420 |
| 06/09/2014 | PUR | 8 | $47.8490 |

schaefer